UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AARON DIAZ LIRANZO,<br><br>  Defendant | Criminal No. 25-CR-10058-NMG-4 |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION**

The government submits this memorandum in support of its recommendation for **168 months of incarceration** for the Defendant, followed by three years of supervised release. This recommendation reflects the seriousness of the offense, the need for deterrence and punishment, and is sufficient but no greater than necessary to accomplish the goals of sentencing. The government's recommendation reflects a sentence that is consonant with justice and accords with the sentencing factors under Section 3553(a).

**THE ADVISORY SENTENCING GUIDELINES**

The government agrees with the offense level calculation provided by U.S. Probation, which calculated the offense level in the final Presentence Report to be 39 (PSR ¶¶93-142). With an agreed-to criminal history score of one, the criminal history category is I (PSR ¶¶146-148). Therefore, the guideline sentencing range ("GSR") calculated by Probation is 262 to 327 months (PSR ¶185). The Parties offense level calculation in the Plea Agreement is the same as that found by Probation.

The Plea Agreement entered into by the parties under Fed. R. Crim. P. 11(c)(1)(C) calls for a sentencing range of 144 to 168 months, which is below the GSR as calculated by Probation and the Parties. The Sentencing Range of 144 to 168 months agreed-to by the Parties reflects a

1

downward variance of approximately 7 years, the appropriateness of which the government will address below.

## ARGUMENT

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). Among those factors are the "nature and circumstances of the offense," promoting respect for the law, and providing just punishment. See 18 U.S.C. § 3553(a)(2)(A). The sentence must also afford "adequate deterrence" for both the defendant and others. See 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct"). Lastly, the sentence must protect the public from the further crimes of the Defendant. See 18 U.S.C. § 3553(a)(2)(C) ("protect the public from further crimes of the defendant"). Consideration of the § 3553(a) factors demonstrates that a sentence of 168 months is sufficient, but not greater than necessary, to meet the goals of sentencing.

    **A.**    **Nature and Circumstances of the Offenses**

As described throughout the presentence report, the Defendant was a Chapter lead of an extremely violent organization, the Trinitarios. The PSR is replete with the Defendant associating with other members of this Trinitarios. Numerous images and videos depict him wearing the Trinitario beaded necklaces with other members and making gang signs. Other videos depict him holding firearms. The photographs and videos demonstrate that the Defendant was an enthusiastic member of the organization. This enthusiasm resulted in violence and prompted his ascent to leadership of the Lynn Chapter of the Trinitarios.

The Trinitarios is simply a murderous organization. In this and related cases before this Court, six murders are alleged to have been committed by its members in furtherance of gang's

goal. *See* ECF #10-1. These six murders do not include the many other murders that were successfully prosecuted in state court and others that remain unsolved and uncharged. *See* ECF #10-1. This Defendant, while not a charged participant in the completed murders, certainly promoted and furthered their murderous ends both in an organizational sense and through the commission of the attempted murder he committed in March 2019. The victims in that incident were members of the Tiny Rascal Gangsters, or TRG, a rival gang in the Lynn area.

The Defendant participated in a well-orchestrated hit that would have resulted in a double murder, but for lifesaving care that victims received. The victims were lured to a nightclub by another member of the Trinitarios, LUIS ENRIQUE SANTANA, A/K/A "CHIQUITO," who posed on social media as a female. SANTANA extracted information about the vehicle being used by the victims and the victims' whereabouts and relayed it to the Defendant and codefendant ENMANUEL PAULA-CABRAL. PAULA-CABRAL drove the Defendant to the nightclub and dropped him off, and he then went and opened fire on the vehicle containing the three victims. From the number of shell casings and bullet holes, it appears that the Defendant fired six rounds at the victims' vehicle. Two of the victims were struck and fortuitously survived as a result of immediate lifesaving care they received from first responders.

For this attempted murder alone, the sentencing factors require a substantial punishment. However, there were many other crimes committed by the Defendant, including a robbery of a delivery driver, firearm and drug sales and burglaries of convenience stores. In short, the Trinitarios were a crime-wave unto themselves, and the Defendant was not only a participant in these crimes, but he was a prominent leader of the organization under whose umbrella these crimes were committed.

Nevertheless, this is the Defendant's first conviction, the maximum penalty is 20-years in

prison, and the Defendant agreed to plead guilty about 9 days after arrest. Based on these crimes, the government suggests that 14 years is a necessary sentence. But for the Defendant's extraordinary decision to admit guilt with days of arrest, the number and nature of these crimes would merit little in the way lenience. However, in this context, the government believes that a 14-year term in federal prison properly accounts for the natures and seriousness of these crimes.

**B.    Criminal History, Specific Deterrence, Punishment**

This is the Defendant's first criminal conviction. He has not served any prior sentences, and his first will be at least 12 years under the terms of the Plea Agreement. This sentencing range is well earned through the attempted murder, the leadership of the violent organization, and the drug and firearm offenses that he personally committed. Nevertheless, there is a measure of leniency in the government agreeing to a 14-year cap, and the Defendant thereby avoiding 20 years in prison for his first conviction.

The government believes that specific deterrence will be well-served by this below-guideline sentence. Fourteen years in prison for the Defendant's first substantive conviction should deter him from crimes in the future. Unlike many other offenders who present with lengthy criminal histories, this is a serious sentence imposed at the beginning of the Defendant's involvement in the criminal justice system, when deterrence can be most effective. This sentence will account for the Defendant's conduct and lack of productive work history and hopefully adjust the Defendant's mindset and thinking toward productive employment.

The sentence also serves the goal of punishing the Defendant. It is mere fortuity that the Defendant's attempted murder did not result in the death of the victims he shot. It is also a second stroke of luck that the Defendant was not substantively charged with the September 2, 2023, double murder committed by members of the Lynn Chapter that he led. Nevertheless, but for the

immediate and complete acceptance of responsibility demonstrated by the Defendant, a 20-year term would be more than warranted.

In context, the 168-month term reflects the proper measure of punishment. Fourteen years is not a significant portion of an individual's life, and it will have the desired effect of achieving a just punishment for these heinous offenses and his role in the destruction of his community. While nearly all those before the Court clamor for leniency at sentencing, very few do so after completely accepting responsibility nine days after arrest and agreeing to a substantial minimum term of incarceration. In this context, the government believes that the Defendant's acceptance of responsibility is linked to a demonstrated desire to remove himself from this gang, pay the heavy price associated with his crimes, and end his criminal lifestyle. Consequently, the promise of specific deterrence seems well supported for this Defendant with the proposed sentence range.

**C.    General Deterrence, Promotion of Respect for the Law, and Public Protection**

General deterrence and promotion of respect for the law must also be considered, and this Court should be mindful of the message that the sentence will send to drug dealers, gang members, and those who wield firearms while dealing drugs. A sentence of 168 months accomplishes all of these goals of sentencing: promoting respect for the law, public protection and deterrence.

To that end, a sentence of 168 months sends a strong deterrent message of what can be expected for those who participate in gang violence, lead other gang members in the commission of criminal offenses. This is especially true of the message sent to the other members of the Trinitarios, like the Defendant, who are not charged with a murder and still face significant jeopardy for their role and involvement despite not killing someone or lacking a criminal history.

Moreover, this Defendant is also well known in Lynn, both to other Trinitario members charged in this case and those Trinitarios that remain uncharged. His sentence and the sequence of

federal involvement in this case will serve as an example and warning. While there is the potential for mitigation for those who promptly accept responsibility and demonstrate an understanding there is a penalty for these crimes, even those facing a first conviction will be held accountable with far more than a decade in prison for the crimes they commit as part of this organization. Furthermore, the nature of this organization is one that insulates its leaders and members from prosecution and endeavors to use sophisticated applications to communicate and coordinate their violence. That this Defendant, who is a leader, promptly accepted responsibility and a significant term of prison is a message that will be sent across the landscape of gang members. The audience includes those younger members who may in the process of being recruited or lesser-involved members who may see this example and understand the end-result of their involvement in the Trinitarios organization.

Had this Defendant not elected to plead guilty to a serious sentence and demonstrated a willingness to accept responsibility and a justly deserved and lengthy punishment, he could have expected to spend significantly more time in prison for the attempted murder, the robbery, and the amount of drugs he distributed and firearms he possessed as a leader of this organization. He can certainly expect to spend additional years in prison if he reoffends on supervised release. This too is a message of deterrence achieved by this sentence.

This sentence called for by the government, which is 14 years for a first-time felon will also protect the public from this Defendant and his leadership of the Trinitarios for the foreseeable future. Moreover, this lengthy sentence for a first non-capital offense will also hopefully curb the potential that the Defendant returns to crime in the future, further protecting the public after his release. Lastly, the swiftly imposed 168-month sentence -- given the Defendant's immediate acceptance of responsibility, uncontested detention, and willingness to plead guilty without any

litigation -- certainly promotes respect for the law and sends a resounding message as to the seriousness of this case.

## CONCLUSION

Based upon the foregoing, the government requests that the Court impose a sentence of 168 months, followed by three years of supervised release.

Respectfully submitted,

LEAH B. FOLEY,
United States Attorney

By:   */s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant U.S. Attorney

Date:   June 22, 2025